UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 10-cv-06800 |
| | ) | |
| v. | ) | Judge William J. Hibbler |
| | ) | |
| THE STATE OF ILLINOIS; | ) | |
| THE ILLINOIS STATE BOARD OF | ) | |
| ELECTIONS; and DANIEL WHITE, | ) | |
| Executive Director of the Illinois State | ) | |
| Board of Elections, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>PETITION TO INTERVENE BY THE ILLINOIS REPUBLICAN PARTY</u>

The Illinois Republican Party, on behalf of itself, affiliated voters, and candidates for state and federal office, hereby respectfully moves to intervene in this case pursuant to FED R. CIV. P. 24(a), or in the alternative, under FED R. CIV. P. 24(b), in order to vindicate the rights of American servicemen and women to vote and other eligible overseas voters, and to have those votes counted, pursuant to the guarantees of the United States Constitution, the Illinois Constitution, state law, and the Uniformed and Overseas Civilian Absentee Voting Act ("UOCAVA"). Intervenor submits a Memorandum in Support of this petition, as well as a complaint as required by FED R. CIV. P. 24(c), and a Petition for Injunctive Relief.

Respectfully submitted,

The Illinois Republican Party

/s/
Counsel for the Plaintiff Intervenor

John Fogarty, Jr.
Law Office of John Fogarty, Jr.
4043 N. Ravenswood, Ste. 226
Chicago, Illinois 60613
(773) 549-2647
(773) 681-7147 (fax)
fogartyjr@gmail.com
ARDC # 6257898

Brien Sheahan
Law Office of Brien Sheahan
5 Saint Regis Court
Elmhurst, Illinois 60126
(630) 728-4641 phone
(866) 796-5676 fax
bsheahan@sheahanlaw.com
Illinois attorney registration No. 6256664

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 10-cv-06800 |
| | ) | |
| v. | ) | Judge William J. Hibbler; |
| | ) | |
| THE STATE OF ILLINOIS; | ) | |
| THE ILLINOIS STATE BOARD OF | ) | |
| ELECTIONS; and DANIEL WHITE, | ) | |
| Executive Director of the Illinois State | ) | |
| Board of Elections, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF ILLINOIS REPUBLICAN PARTY'S PETITION TO INTERVENE**

## I.  INTRODUCTION

The underlying action before this Court is the result of the failure of at least 35 local Illinois election authorities, and the Illinois State Board of Elections (SBE), to comply with the requirements of the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 42 U.S.C. §§1973ff *et seq*, which requires that absentee ballots be mailed, or otherwise transmitted, to UOCAVA voters by September 18, 2010—45 days prior to the November 2, 2010 general election. The failure to comply with state and federal election law by the defendants will result in the unlawful and unconstitutional disenfranchisement of UOCAVA voters who received ballots after the deadline for transmission—some almost three weeks late—and were unable to return their ballots prior to Election Day.

The remedy proposed by the DOJ and SBE in the Consent Decree filed today to (a) extend the postmark deadline for ballots to be counted to November 2, 2010 for Boone, Jersey, and St. Clair, Hancock, Massac, and Schyler Counties, and (b) to extend the deadline for receipt of ballots for UOCAVA voters in Boone, Jersey, and St. Clair counties to November 18, 2010 and for UOCAVA voters in Hancock, Massac, and Schyler Counties to November 19, 2010 , is insufficient to vindicate the constitutional and statutory voting rights of qualified UOCAVA voters in those counties, and does nothing to vindicate the rights of UOCAVA voters in the other 29 counties that were delayed as much as two weeks in transmitting ballots. The Resulting unequal treatment of similarly situated voters in various counties violates the equal protection of these voters.

Accordingly, the Illinois Republican Party respectfully moves to intervene so that the voting rights of American military service members and overseas citizens to participate in the general federal election are protected, and that they receive an adequate and lawful opportunity to request, mark, and return absentee ballots, and to have those ballots counted.

In particular, the Illinois Republican Party asks this Court to grant injunctive relief from the proposed consent decree filed by the DOJ and SBE so that military and overseas voters have the full 59 day opportunity to receive, mark, return and have their votes counted. The IRP also recognizes the difficulty of extending the receipt-of-ballot deadline and alternatively would seek an order that recognizes the November 19, 2009 deadline set by the Permanent Injunction Order issued by the Honorable John F. Grady in Judge v. Quinn. No. 09-cv-1231, D.E. 76. .

Accordingly, the Illinois Republican Party attaches hereto a proposed Complaint (Exhibit A) and proposed Motion for Injunctive Relief (Exhibit B) to ensure that the rights granted to

military and overseas voters under the United States Constitution, First and Fourteenth Amendments, UOCAVA, and state law are upheld.

## II.    STATEMENT OF FACTS

After widespread disenfranchisement of military voters in 2008, Congress moved quickly to pass the most significant military voting reform in 25 years.  The Military and Overseas Voter Empowerment Act (MOVE Act), Pub. L. No. 111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2318-2335 (2009), modified the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. § 1973ff-1, and greatly expanded the opportunities for military members to vote.  In particular, the MOVE Act required states to provide military voters with expanded opportunities to receive election materials electronically (email, facsimile, or online ballot delivery tool), *see* 42 U.S.C. § 1973ff-1(e), and required states to mail absentee ballots to military and overseas voters not later than 45 days before an election. *See* 42 U.S.C. § 1973ff-1(a)(8).

The legislative history of the MOVE Act makes clear why Congress required both electronic delivery and increased mail delivery times. According to Senator Charles Schumer, one of the lead authors of the MOVE Act, while "quick [electronic] transmission will give them for the first time a sufficient number of days to vote," the 45-day mail delivery time was needed "[f]or those who have no access to electronic delivery…" The 45-day standard "should provide the time for a ballot to travel to Iraq or Afghanistan, and back to the local election official." Cong. Rec. S10681 (daily ed. October 22, 2009) (statement of Sen. Schumer).

UOCAVA mandates that States, including Illinois, allow American servicemen and women and overseas voters, (collectively "military voters") "to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for

3

Federal office." 42 U.S.C. §1973ff(a)(1). Members of the armed services who are overseas who are voters include active duty military members and their voting age dependents. *Id.* §1973ff(6)(1).

In addition to the provisions of UOCAVA, Illinois law has measures for meeting the unique needs of military personnel, and overseas citizens. 10 ILCS 5/20-1 *et seq*. Notably, these provisions require that local election authorities prepare ballots in a timely fashion. Namely the law requires that local election authorities shall print ballots at least 60 days prior to the date of any general election at which federal officers are elected. 10 ILCS 5/16-5.01(a). If ballots cannot be ready 60 days prior to the general election Illinois law provides that the local election authority shall mail Special Write-in Absentee Voter's Blank Ballots to each person requesting an absentee ballot. 10 ILCS 5/16-5.01(b). There is absolutely no excuse why military and overseas ballots should have been mailed after September 18, 2010, the deadline set by UOCAVA.

Despite the protections of UOCAVA and the requirement under state law that ballots be prepared well in advance of the election, nearly a third of local election authorities failed to prepare ballots according to the statutorily mandated requirement pursuant to state law, and failed to meet the 45-day deadline in UOCAVA. Furthermore the United States Justice Department failed to adequately monitor and enforce the provisions of UOCAVA.

As the result of a Freedom of Information Request filed by the Illinois Republican Party, the following timeline was determined: On September 15, 2010 the SBE emailed local election authorities the following message:

> Wednesday, September 15, 2010 10:20 AM
> Subject: FW: MOVE Act inquiry from the Department of Justice

Local Election Authorities: Attached please find an e-mail received this morning from the Department of Justice. Please be advised that Justin called my office yesterday as well to ensure that we were on track with getting ballots out this Saturday.

He specifically mentioned the media attention that Roland Burris was receiving; but as the Courts have not yet been formally served or issued a directive, the DOJ expects ballots to go out starting Saturday.

I will be contacting each of you on Monday and relaying all information to the DOJ. Thank you in advance for your attention to this matter.

***********************

Sent: Tuesday, September 14, 2010 5:33 PM
Subject: MOVE Act inquiry from the Department of Justice

Dear Executive Director White:

Thank you for the information you have provided us in recent months about your state's efforts to comply with the MOVE Act's amendments to UOCAVA. As you know, one of the key provisions of the MOVE Act requires that ballots be transmitted to UOCAVA voters by September 18, the 45th day before the November 2, 2010 Federal general election.

Pursuant to our UOCAVA enforcement responsibilities, we are asking, as we have in prior elections, that your office monitor the mailing of absentee ballots to UOCAVA voters to ensure that ballots are sent by your local election officials by the September 18 deadline. We ask that you monitor the date UOCAVA ballots are sent, and provide us with a status report by September 20 to confirm whether each of your localities has met the 45-day deadline. Also, we would request that you alert us in advance if you anticipate any delays in the ability of any of your localities to transmit ballots to UOCAVA voters by September 18, and the reason for those delays.

We appreciate your continued cooperation in ensuring that uniformed service members and their families and overseas citizens have a meaningful opportunity to vote in this election. We know you share our commitment to this endeavor. Many thanks,

On September 20, 2010 the SBE emailed the DOJ a "report" that consisted of the following:

Subject: RE: MOVE Act inquiry from the Department of Justice

5

Sent: Monday, September 20, 2010 3:33 PM

[I]n response to your request to monitor our local election officials, please be advised that Illinois military and overseas ballots went out between September 3rd (Illinois law) and September 18th (Federal law). From this point forward, all requests received will be mailed out that same day. Four counties have not yet received any military/overseas ballot requests (Brown, Clark, Henderson and Union). Thank you!

On October 13, 2010, the SBE emailed the following message to local election

authorities:

Sent: Wednesday, October 13, 2010 9:48 AM
Cc: White, Dan; Borgsmiller, Rupert; Sandvoss, Steve
Subject: Department of Justice

EXTREMELY IMPORTANT!

Please be advised that the Department of Justice has asked for the following information ASAP. As those of you who attended the Conference at the Crown Plaza in September are aware, the DOJ is VERY SERIOUSLY looking at Illinois and our response to the federal MOVE Act. I cannot STRONGLY ENOUGH emphasize how important it is for you to get this information back to me in a timely manner. I know some of you have provided some of this information in the past (you were asked for the date when the ballots were mailed out; that chart is attached). Please take a few moments and e-mail me back your responses in the spaces provided.
Thank you.

Number of UOCAVA ballots requested (on file with the election authority) by September 18th. _____
Number of UOCAVA ballots that were sent out by or on September 18th. _____
**If not sent by or on September 18th, how many were sent and on what date? _____ Date: _____
How many were mailed (U.S. Postal Service)? _____
How many were e-mailed? _____
How many were overseas citizens? _____
How many were military? _____ Domestic? _____ Aboard? _____

On October 13, 2010, the SBE forwarded the results of this survey to the DOJ. The initial

survey found that 25 local elections authorities had failed to mail ballots by the September 18,

2010 deadline and therefore had failed to comply with UOCAVA and state election law, and

another 29 local election jurisdictions failed to respond at all to the request for information from the SBE and DOJ. *See Exhibit C.* Illinois State Board of Elections, DOJ survey Military Ballots.xlsx.

On October 14, 2010, the SBE completed their survey finding that 35 out of 110 local election authorities had not mailed 2,665 absentee ballots to UOCAVA eligible voters 45 days prior to the general federal election as required by state and federal law. *Id.*

The actions described above by the SBE and local election authorities violate the rights of absentee voters protected under UOCAVA, as amended by the MOVE Act, the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, and Illinois state law.

## III. ARGUMENT

Intervention under FED R. CIV. P. 24 provides a means for non-parties—such as the Illinois Republican Party—to "protect interests that might otherwise be adversely affected." *iWork Software, LLC v. Corporate Express, Inc.*, 2003 WL 22494851 at *1 (N.D. Ill. 2003). Rule 24 allows for two types of intervention: (1) intervention as of right; and (2) permissive intervention. Irrespective of the type of intervention sought, "Rule 24 should be liberally construed *in favor of potential interveners.*" *Id.* (emphasis added). The Illinois Republican Party qualifies for intervention under both standards.

### A. The Illinois Republican Party Is Entitled to Intervene as a Matter of Right.

Rule 24(a)(2) allows for intervention as of right, and the Seventh Circuit has determined that intervention as of right *must* be granted where the following four criteria are met:

> '(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties of the petition.'

*Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (quoting *Shea v. Angulo*, 19 F.3d 343, 344 (7th Cir. 1994)). As discussed further below, the Illinois Republican Party meets these four requirements.

### 1) The Illinois Republican Party's Motion is Timely

As the Seventh Circuit has noted, the test for timeliness "is essentially one of reasonableness: 'potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly.'" *Reich*, 64 F.3d at 321 (quoting *Nissei Sangyo America, Ltd. v. United States*, 31 F.3d 435, 438 (7th Cir. 1994) (internal citations omitted)). In making this timeliness determination, a court must also consider the prejudice to the original parties and to the "intervenor if his motion is denied." *Id.* The Illinois Republican Party's motion to intervene was filed the same day that the proposed Consent Decree between the DOJ and SBE was filed with this Court. Accordingly, the Illinois Republican Party's motion is timely, and there is no risk of prejudice to either the DOJ or SBE by allowing the Illinois Republican Party to intervene at this early stage. In contrast, the Illinois Republican Party and its affiliated voters and candidates for office would suffer great prejudice if its motion to intervene was denied, given the significant interests it holds in this case, as explained further below.

### 2) The Illinois Republican Party Maintains Valid Interests in This Action

A prospective intervenor's interest in the action must be "'direct, significant, and legally protectable.'" Security Ins. Co. of Hartford v. Schipporeit, Inc., et al., 69 F.3d 1377, 1380 (7th Cir. 1995) (quoting *Am. Nat'l Bank v. City of Chicago*, 856 F.2d 144, 146 (7th Cir. 1989)). The

interest must be "something more than a mere 'betting' interest . . ., but less than a property right . . . ." *Id.* at 1381. The Illinois Republican Party has a direct and significant interest in this litigation and the November 2, 2010 general election. The Illinois Republican Party has numerous candidates on the ballot and hundreds of thousands of affiliated voters who have a right to cast their votes for these candidates. The Illinois Republican Party's involvement as a party to this litigation is necessary to ensure that the constitutional and statutory rights of Republican candidates for office and the rights of Illinois voters who wish to vote for those candidates are upheld.

### 3) The Illinois Republican Party's Interests Would Be Impaired By This Action

The disposition of this case may impair the Illinois Republican Party's ability to protect the interests of its candidates for office and those individuals who wish to vote for those candidates. Impairment "depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982).

For the reasons discussed above, the outcome of the underlying action between the DOJ and SBE will directly affect the interests of the Illinois Republican Party and its affiliated voters and candidates for office. The central issue raised by the underlying action is whether the votes of military service personnel and citizens abroad will be counted. By approving the consent decree proposed by the DOJ and SBE, military service personnel and overseas citizens would be entitled only to a one-day extension in which to return their ballots, despite the fact that numerous Illinois election authorities were *weeks* late in sending ballots to those voters. A mere one-day extension in the postmark requirement for military service personnel and overseas voters would undeniably impair their ability to vote for the Republican candidates of their choice

considering that they received their ballots weeks after the statutory requirement and that the return transmittal of those ballots sometimes takes weeks.

**4) The Existing Parties Do Not Adequately Protect the Illinois Republican Party's Interests.**

The existing parties will not fully and adequately protect the Illinois Republican Party's interests in ensuring that the votes of military service personnel and citizens abroad are counted. Although a would-be intervenor has the burden to demonstrate that the representation of its interest may be inadequate, the Seventh Circuit has held that such a burden is "minimal." *Lake Investors Dev. Group, Inc. v. Egidi Dev. Group*, 715 F.2d 1256, 1261 (7th Cir. 1983).

As discussed above, the remedy agreed to by the SBE and DOJ, unfortunately, fails to adequately ensure that the constitutional and statutory rights of qualified UOCAVA voters to receive, mark, and return their ballots in time for those ballots to be counted. A one-day extension of the postmark deadline is not a sufficient remedy for a ballot that was sent out weeks late. In addition, the intervention of the Illinois Republican Party should be favored because of the opportunity for the Court to hear the viewpoint of a party without the self-interest of either having been responsible for the failed administration of absentee balloting or the failed enforcement of a federal statute. *See Ligas v. Maram*, 2010 WL 1418583 (N.D.Ill. April 07, 2010) (finding intervention appropriate to review of proposed consent decree). The Illinois Republican Party's intervention in this matter therefore is essential to ensure that military service personnel and citizens abroad are not disenfranchised. *See Maxum Indemnity Co. Security Insur. Co. of Hartford v. Eclipse Manufacturing Co.*, 2008 WL 4831734 at *4 (N.D. Ill. 2008) (granting motion to intervene because "[n]o other party is in precisely the same position as [the intervening party]"); *Heller Financial Leasing, Inc. v. Gordon*, 2004 WL 2806458 at *9 (N.D. Ill. 2004)

(granting motion to intervene even though a party in the case had a fiduciary duty to the intervening party because "[s]uch a connection in and of itself is not proof that his interest and [the intervening party's] interests are synonymous and there are potential differences in [the party's] choice of arguments and representation in the action and those for [the intervening party]").

**B.      Alternatively, This Court Should Exercise Its Discretion to Permit the Illinois Republican Party to Intervene in This Action.**

If the Court finds that the Illinois Republican Party is not entitled to intervene as a matter of right (which it is), the Court should still exercise its discretion to permit intervention for the same reasons discussed above. Permissive intervention may be allowed in the Court's discretion when the would-be intervenor's claim and the main action involve a common question of law or fact. Fed. R. Civ. P. 24(b)(1)(B). The timeliness of the motion to intervene, and potential prejudice to the original parties, guide courts' consideration of permissive intervention motions. Fed. R. Civ. P. 24(b)(3).

All of these factors weigh in favor of the Illinois Republican Party's intervention. The underlying litigation between the DOJ and SBE, and the Illinois Republican Party's proposed relief all raise common questions of law and fact. Indeed, the Illinois Republican Party only seeks to revise limited terms in the proposed Consent Decree and thus new questions of law or fact do not exist or would be very minimal. Further, as discussed above, no undue delay or prejudice will result from allowing the Illinois Republican Party to intervene at this early stage of this proceeding. Indeed, this motion is brought the same day that the Consent Decree was filed with this Court.

## IV.    CONCLUSION

For these reasons, the Illinois Republican Party asks the Court to grant its motion to intervene in this matter and that the Court deem that the Illinois Republican Party's Complaint (Exhibit A) and Motion to Amend the Consent Decree (Exhibit B) be deemed filed on the day that this motion to intervene is granted.

Respectfully submitted,

The Illinois Republican Party

/s/
Counsel for the Plaintiff-Intervenor

John Fogarty, Jr.
Law Office of John Fogarty, Jr.
4043 N. Ravenswood, Ste. 226
Chicago, Illinois 60613
(773) 549-2647
(773) 681-7147 (fax)
fogartyjr@gmail.com
ARDC # 6257898

Brien Sheahan
Law Office of Brien Sheahan
5 Saint Regis Court
Elmhurst, Illinois 60126
(630) 728-4641 phone
(866) 796-5676 fax
bsheahan@sheahanlaw.com
Illinois attorney registration No. 6256664

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>and )<br>)<br>)<br>THE STATE OF ILLINOIS; )<br>THE ILLINOIS STATE BOARD OF )<br>ELECTIONS; and DANIEL WHITE, )<br>Executive Director of the Illinois State )<br>Board of Elections, )<br>)<br>      Defendants. ) | Civil Case No. 10-cv-06800<br><br>Judge William Hibbler |

## COMPLAINT

The Plaintiff-Intervenor, the Illinois Republican Party, by and through counsel, bring this suit in equity for deprivation of voting rights, privileges, and immunities guaranteed by the United States Constitution, and laws of the United States and the State of Illinois, and states as follows:

### I. INTRODUCTION

1.    This action is brought pursuant to the United States Constitution, the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C § 1983, and the Uniform and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), 42 U.S.C. §1973ff *et seq*, as amended by the Military and Overseas Voter Empowerment Act ("MOVE Act"), Public law 111-84, October 28, 2009, and state law.

2.    This action is necessary to ensure that the voting rights of American military service members and overseas citizens to participate in the November 2, 2010 general federal election are protected, and that they receive an adequate and lawful opportunity to request, cast, and return absentee ballots. This action is necessary to remedy the deprivation of these rights,

under color of state law, as guaranteed by the United States Constitution, First and Fourteenth Amendments, UOCAVA, and state law.

3.      Those rights are in jeopardy because thirty-five (35) Illinois counties failed to timely transmit absentee ballots to UOCAVA voters – some counties delaying the transmission of those ballots as much as three weeks – thus threatening the ability of those affected voters to mark and return their ballots in time to be counted.

4.      On October 22, 2010, The Department of Justice and the Illinois State Board of Elections submitted a Consent Decree that purported to vindicate the voting rights of those affected UOCAVA voters.  However, the Consent Decree allows only certain UOCAVA voters merely one additional day to mark and return their ballots, despite the several week delay in their receiving their ballots.  This Consent Decree therefore fails to adequately protect the rights of American military service members and overseas citizens to cast their ballots.

## II. JURISDICTION AND VENUE

5.      This is a civil suit arising under the laws of the United States and laws of the State of Illinois. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331. The Plaintiff-Intervenor also seeks equitable and other relief under the United States Constitution and the UOCAVA, as amended, therefore giving this Court subject matter jurisdiction under 28 U.S.C. §1343. This Court has pendent jurisdiction over the state law claims in this case.

6.      Venue is proper for this action in this district and division pursuant to 28 U.S.C. §1391(b), in that a substantial part of the events or omissions giving rise to the claims occurred and/or will occur in this district and division.

## III. PARTIES

7.     Plaintiff-Intervenor, The Illinois Republican Party, is a non-profit corporation and established political party organized and sanctioned under the laws of the State of Illinois. The Illinois Republican Party represents hundreds of thousands of affiliated voters, including voters in counties where UOCAVA ballots were mailed late, thousands of Republican precinct committeemen and captains, as well as hundreds of candidates on both the federal and state ballots in Illinois whose rights to full and fair elections are impacted by this Consent Decree.

8.     The Illinois Republican Party has standing to sue in this case because (a) thousands of Illinois citizens are members of and affiliated with the Republican Party, including those who are UOCAVA qualified voters, have standing to sue in their own right in this case; (b) the interest of the Illinois Republican Party and the voters and candidates it represents is germane to its purpose; and (c) although an individual member of the Illinois Republican Party is a participant in this lawsuit, neither the claim asserted nor the relief requested requires the participation of individual members in this lawsuit.

## IV. BACKGROUND

9.     Paragraphs 1 through 12 of the Consent Decree set forth the factual predicate of this action. Intervenor stipulates to those facts, and for the sake of brevity, does not restate them here.

## COUNT I - FAILURE TO COMPLY WITH UOCAVA

10.     Plaintiff-Intervenor re-alleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

11.     The State Board of Elections and the Department of Justice have failed to properly ensure that UOCAVA voters receive their ballots in a timely manner, and have further failed to vindicate the rights of those affected voters per the Consent Decree.

12.    Plaintiff-Intervenor has no adequate remedy at law and no means of obtaining relief other than through the equitable powers of the Court, therefore an order of this Court is necessary to remedy the UOCAVA violation.

WHEREFORE, Plaintiff-Intervenor respectfully requests this Court enter an Order (1) ensuring that any ballot that is returned by an overseas or military voter will not be rejected on timeliness grounds caused by the State Board and local election authorities' failure to comply with UOCAVA and State law in the printing and dissemination of military ballots within 45 days of the general election; (2) require the State Board and local election authorities to take immediate steps to notify service members who requested ballots of election deadlines and expedite the certification and transmittal of the November ballots to and from military voters; (3) provide sufficient time after the November election to ensure that military and overseas voters have at least 45 days to receive and return their absentee ballot, and 14 days for local election authorities to receive and count UOCAVA ballots that were transmitted late, or in the alternative to ensure the election is completed in a timely manner while also ensuring the suffrage of UOCAVA voters, (4) eliminating the postmark deadlines for UOCAVA ballots and simply using the November 19, 2010 receipt-of-ballot deadline laid out in the proposed Consent Decree, and the Permanent Injunction Order issued by the Honorable John F. Grady in Judge v. Quinn, No. 09-cv-1231, D.E. 76; and (5) sequestering those UOCAVA ballots postmarked after November 2, 2010, but received by November 19, 2010, and further directing the parties to address the issue only if those UOCAVA ballots might affect the outcome of any disputed election on the November 2, 2010 ballot.  Such ballots would be preserved by the SBE and Illinois election authorities until further order by this Court.

## COUNT II - FAILURE TO COMPLY WITH SECTION 20-2 OF THE ILLINOIS ELECTION CODE

13.     Plaintiff-Intervenor re-allege and incorporate by reference all the allegations contained in all of the preceding paragraphs.

14.     Illinois law provides that, "Any member of the United States Service, otherwise qualified to vote, who expects in the course of his duties to be absent from the county in which he resides on the day of holding any election may make application for an absentee ballot to the election authority having jurisdiction over his precinct of residence on the official postcard or on a form furnished by the election authority...." 10 ILCS 5/20-2.

15.     Under Illinois law, "The election authority shall, at least 60 days prior to the date of any general election at which federal officers are elected...have a sufficient number of ballots printed so that such ballots will be available for mailing 60 days prior to the date of the election to persons who have filed application for a ballot under the provisions of Article 20 of this Act [voting by absent electors in military or naval service]. 10 ILCS 5/16-5.01(a)

16.     If at any election at which federal offices are elected or nominated the local election authority is unable to comply with the provisions of subsection 5/16-5.01(a), the election authority shall mail to each such person, in lieu of the ballot, a Special Write-in Absentee Voter's Blank Ballot. The Special Write-in Absentee Voter's Blank Ballot shall be used at all elections at which federal officers are elected or nominated and shall be prepared by the election authority. 10 ILCS 5/16-5.01(b).

17.     Absentee military ballots voted pursuant to Illinois law must be returned postmarked no later than midnight preceding election day and received for counting at the central

ballot counting location of the election authority during the period for counting provisional ballots, the last day of which is the 14th day following election day. 10 ILCS 5/20-2.

18.    Local election authorities were directed by the Department of Justice and State Board to be ready to transmit absentee ballots by September 18, 2010, 45 days prior to the election pursuant to UOCAVA and provisions of the MOVE Act.

19.    Illinois law contains no provisions granting the State Board or local election authorities the discretion to waive, or ignore, statutory deadlines for printing and distributing absentee military ballots simply because it may be uneconomical or inconvenient for them. Illinois law requires that absentee military ballots be printed well in advance of the election, or that special write-in ballots be sent instead by the statutory deadlines. There is simply no lawful reason why military ballots should have been delayed and given the nature of military service, especially in warzones, any delay will likely disenfranchise military and overseas voters.

WHEREFORE, Plaintiff-Intervenor respectfully requests this Court enter an Order (1) ensuring that any ballot that is returned by an overseas or military voter will not be rejected on timeliness grounds caused by the State Board and local election authorities' failure to comply with UOCAVA and State law in the printing and dissemination of military ballots within 45 days of the general election; (2) require the State Board and local election authorities to take immediate steps to notify service members who requested ballots of election deadlines and expedite the certification and transmittal of the November ballots to and from military voters; (3) provide sufficient time after the November election to ensure that military and overseas voters have at least 45 days to receive and return their absentee ballot, and 14 days for local election authorities to receive and count UOCAVA ballots that were transmitted late, or in the alternative to ensure the election is completed in a timely manner while also ensuring the suffrage of

UOCAVA voters, (4) eliminating the postmark deadlines for UOCAVA ballots and simply using the November 19, 2010 receipt-of-ballot deadline laid out in the proposed Consent Decree, and the Permanent Injunction Order issued by the Honorable John F. Grady in Judge v. Quinn, No. 09-cv-1231, D.E. 76; and (5) sequestering those UOCAVA ballots postmarked after November 2, 2010, but received by November 19, 2010, and further directing the parties to address the issue only if those UOCAVA ballots might affect the outcome of any disputed election on the November 2, 2010 ballot. Such ballots would be preserved by the SBE and Illinois election authorities until further order by this Court.

## COUNT III -- INFRINGEMENT OF FUNDAMENTAL RIGHT TO VOTE

20.     Plaintiff-Intervenor re-allege and incorporate by reference all the allegations contained in all of the proceeding paragraphs.

21.     The right to vote is a fundamental right, implicating rights protected by the First and Fourteenth Amendments, including the voter's right to make free choices and to associate politically through the vote.

22.     The State Board has imposed, is imposing and/or will impose severe burdens on military voters' right to vote. These burdens are imposed, inter alia, by (a) delaying sending military voters a ballot containing state and federal races until so late in the election process that those ballots cannot be reasonably received, voted and returned by the deadline set by state law; and/or (c) setting a deadline for the return of absentee ballots for military voters that is unreasonably and unnecessarily short, especially given the delay in mailing absentee ballots to military voters.

23.    The aforesaid burdens, alone or in combination, effectively will deny the right to vote to many military voters by making it unnecessarily and/or unreasonably difficult for them to vote, especially when compared to other voters.

24.    The burdens placed upon the military voter's right to vote are so severe that they can only be justified if they are narrowly drawn to advance a state interest of compelling importance. See *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 (1983).

25.    The burdens placed upon the military voter's right to vote do not advance a compelling state interest and are not the result of restrictions narrowly drawn to advance any such interest. In the alternative, even if the burdens imposed on military voters were the result of reasonable and non-discriminatory restrictions, those restrictions do not serve any important regulatory interest and are, therefore, invalid.

WHEREFORE, Plaintiff-Intervenor respectfully requests this Court enter an Order (1) ensuring that any ballot that is returned by an overseas or military voter will not be rejected on timeliness grounds caused by the State Board and local election authorities' failure to comply with UOCAVA and State law in the printing and dissemination of military ballots within 45 days of the general election; (2) require the State Board and local election authorities to take immediate steps to notify service members who requested ballots of election deadlines and expedite the certification and transmittal of the November ballots to and from military voters; (3) provide sufficient time after the November election to ensure that military and overseas voters have at least 45 days to receive and return their absentee ballot, and 14 days for local election authorities to receive and count UOCAVA ballots that were transmitted late, or in the alternative to ensure the election is completed in a timely manner while also ensuring the suffrage of

UOCAVA voters, (4) eliminating the postmark deadlines for UOCAVA ballots and simply using the November 19, 2010 receipt-of-ballot deadline laid out in the proposed Consent Decree, and the Permanent Injunction Order issued by the Honorable John F. Grady in Judge v. Quinn, No. 09-cv-1231, D.E. 76; and (5) sequestering those UOCAVA ballots postmarked after November 2, 2010, but received by November 19, 2010, and further directing the parties to address the issue only if those UOCAVA ballots might affect the outcome of any disputed election on the November 2, 2010 ballot. Such ballots would be preserved by the SBE and Illinois election authorities until further order by this Court.

## COUNT IV – EQUAL PROTECTION VIOLATION

26.     Plaintiff-Intervenor re-allege and incorporate by reference all the allegations contained in all of the preceding paragraphs.

27.     The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution protects citizens from, *inter alia*, unequal treatment under state law.

28.     When a State action places a severe burden on a fundamental right, that action is subjected to strict scrutiny under the Equal Protection Clause.

29.     The right to vote is a fundamental right, implicating rights protected by the First and Fourteenth Amendments, including the voter's right to make free choices and to associate politically through the vote.

30.     As discussed above, the State Board has imposed, is imposing and/or will impose severe burdens on military voters' right to vote. Such burdens, alone or in combination, effectively will deny the right to vote too many military voters by making it unnecessarily and/or unreasonably difficult for them to vote, especially when compared to other voters.

31.    This disparate treatment of the time for UOCAVA eligible voters receive, mark, and return ballots in various Illinois counties constitutes a violation of the rights of absentee voters under the Equal Protection Clause, in that it does not provide all military voters with the same right to vote enjoyed by each other, or other voters.

WHEREFORE, Plaintiff-Intervenor respectfully requests this Court enter an Order (1) ensuring that any ballot that is returned by an overseas or military voter will not be rejected on timeliness grounds caused by the State Board and local election authorities' failure to comply with UOCAVA and State law in the printing and dissemination of military ballots within 45 days of the general election; (2) requiring the State Board to produce a certified list of individuals who applied for military ballots and ballots that were mailed after the September 18, 2010 deadline (3) require the State Board and local election authorities to take immediate steps to notify service members who requested ballots of election deadlines and expedite the certification and transmittal of the November ballots to and from military voters; (4) provide sufficient time after the November election to ensure that military and overseas voters have at least 45 days to receive and return their absentee ballot, and 14 days for local election authorities to receive and count UOCAVA ballots that were transmitted late, or in the alternative to ensure the election is completed in a timely manner while also ensuring the suffrage of UOCAVA voters, (5) eliminating the postmark deadlines for UOCAVA ballots and simply using the November 19, 2010 receipt-of-ballot deadline laid out in the proposed Consent Decree, and the Permanent Injunction Order issued by the Honorable John F. Grady in Judge v. Quinn, No. 09-cv-1231, D.E. 76; and (6) sequestering those UOCAVA ballots postmarked after November 2, 2010, but received by November 19, 2010, and further directing the parties to address the issue only if those UOCAVA ballots might affect the outcome of any disputed election on the November 2,

2010 ballot.  Such ballots would be preserved by the SBE and Illinois election authorities until further order by this Court.

Respectfully submitted,

The Illinois Republican Party

/s/

Counsel for the Plaintiff-Intervenor

John Fogarty, Jr.
Law Office of John Fogarty, Jr.
4043 N. Ravenswood, Ste. 226
Chicago, Illinois  60613
(773) 549-2647
(773) 681-7147 (fax)
fogartyjr@gmail.com
ARDC # 6257898

Brien Sheahan
Law Office of Brien Sheahan
5 Saint Regis Court
Elmhurst, Illinois 60126
(630) 728-4641 phone
(866) 796-5676 fax
bsheahan@sheahanlaw.com
Illinois attorney registration No. 6256664

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 10-cv-06800 |
| | ) | |
| v. | ) | Judge William J. Hibbler |
| | ) | |
| THE STATE OF ILLINOIS; | ) | |
| THE ILLINOIS STATE BOARD OF | ) | |
| ELECTIONS; and DANIEL WHITE, | ) | |
| Executive Director of the Illinois State | ) | |
| Board of Elections, | ) | |
| | ) | |
| Defendants. | ) | |

## INTERVENOR ILLINOIS REPUBLICAN PARTY'S PETITION FOR INJUNCTIVE RELIEF

The Illinois Republican Party, on behalf of itself, affiliated voters, and candidates for state and federal office, hereby respectfully moves this Court for injunctive relief ordering the Illinois State Board of Elections ("SBE") to direct all Illinois election authorities to count all ballots requested and returned pursuant to the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 42 U.S.C. §§ 1973ff to 1973ff-7, and thereby ensure that the full rights of the State's military service personnel and overseas citizens to receive, mark, and return with the statutory timeframe contemplated by state and federal law is upheld. Because the Consent Decree between the SBE and the U.S. Department of Justice ("DOJ") fails to provide sufficient relief to remedy the Defendants' violations of statutory provisions protecting the voting rights of Illinois men and women serving overseas in the armed forces and other Illinois citizens abroad, the statutory postmark requirement for ballots covered by the Consent Decree should be eliminated. In support of the motion, the Illinois Republican Party states as follows:

1

1.      UOCAVA requires states to transmit validly requested ballots to UOCAVA voters not later than 45 days before an election for Federal office when the request is received at least 45 days before the election, unless a hardship exemption is obtained pursuant to Section 102(g) of UOCAVA.  42 U.S.C. § 1973ff-1(a)(8)(A).  Illinois did not seek or obtain a hardship exemption for the November 2, 2010 election.  Paragraph 4, Consent Decree, 10-cv-06800.

2.      Under Illinois law, the ballots of UOCAVA voters will be counted so long as they are postmarked by midnight of the day before the election and received within 14 days of the election. *See* 10 Ill. Comp. Stat. 5/20-2; 10 Ill. Comp. Stat. 5/20-2.1.

3.      Between the requirement that UOCAVA ballots are sent out 45 days before the election and the postmark requirement, the federal and state statutes provide UOCAVA voters with 44 days before the election to receive and return their ballot.

4.      Between the requirement that UOCAVA ballots are sent out 45 days before the election and the requirement that UOCAVA ballots be counted if received within 14 days after the election, the federal and state statutes provide a maximum 59 days from the time that a ballot is sent to a UOCAVA voter to the date that it must be received by election officials in order to be counted.

5.      Defendants violated UOCAVA because local election authorities failed to "transmit absentee ballots to absent uniformed services voters and overseas voters ("UOCAVA voters") from at least 35 Illinois counties by the 45th day before the November 2, 2010 Federal general election" or September 18, 2010. Paragraph 8, Consent Decree, 10-cv-06800.

6.      According to the proposed Consent Decree, "Three counties (Boone, Jersey, and St. Clair) transmitted ballots on October 4, 2010, 16 days late.  Two counties (Hancock and Schuyler) transmitted ballots on October 5, 2010, 17 days late.  One county (Massac) transmitted

ballots on October 8, 2010, 20 days late. The other 29 counties transmitted ballots between 2 and 12 days late, between September 20 and September 30, 2010." Paragraph 8, Consent Decree, 10-cv-06800.

7.    Providing UOCAVA voters with the full 45 days in which to receive and return their ballots would require UOCAVA voters to postmark their ballots by the following deadlines: Massac County --- November 22, 2010; Hancock and Schulyer counties --- November 19, 2010; Boone, Jersey, and St. Clair counties --- November 18, 2010.

8.    Providing UOCAVA voters with the full 59 days would require setting receipt-of-ballot deadlines for UOCAVA voters of: Massac county --- December 6, 2010; Hancock and Schulyer counties --- December 3, 2010; Boone, Jersey, and St. Clair counties --- December 2, 2010.

9.    To remedy the UOCAVA violations, however, the United States and SBE filed a proposed Consent Decree for entry by this Court that only provides one additional day for UOCAVA voters to have their ballots postmarked, as it extends the postmark deadline from November 1, 2010 to November 2, 2010.   Paragraph 13 Consent Decree, 10-cv-06800. UOCAVA voters will therefore have between two and three weeks less time to receive, return, and postmark their ballots than provided for by the statute.

10    Equally troubling, the proposed Consent Decree "extends the deadline *for receipt of ballots* for UOCAVA voters in Boone, Jersey, and St. Clair Counties until November 18, 2010, and for UOCAVA voters in Hancock, Massac, and Schuyler Counties until November 19, 2010." CITATION (emphasis added). The two and three-day extensions of the receipt-of-ballot deadlines leave UOCAVA voters with a full two weeks less time for their ballots to be received than provided for by statute.

11.    The Illinois Republican Party understands the difficulty with extending the receipt-of-ballot deadlines into December and thereby substantially delaying election results. It does not, therefore, seek to amend the receipt-of-ballot deadlines under the proposed Consent Decree.  It recognizes the November 19, 2009 deadline as one that is reasonable under the circumstances and consistent with the Permanent Injunction Order issued by the Honorable John F. Grady in *Judge v. Quinn*, No. 09-cv-1231, D.E. 76.

12.    But UOCAVA voters must have sufficient time to return their ballots to the election authorities in order to participate fully in the November 2, 2010 election, so it is imperative that the postmark deadline for UOCAVA ballots be removed.

13.    To ensure the election is completed in a timely manner while also ensuring the suffrage of UOCAVA voters, therefore, the Illinois Republican Party proposes eliminating the postmark deadlines for UOCAVA ballots and simply using the November 19, 2010 receipt-of-ballot deadline laid out in the proposed Consent Decree, and the Permanent Injunction Order issued by the Honorable John F. Grady in *Judge v. Quinn*, No. 09-cv-1231, D.E. 76.

14.    In the alternative, the Illinois Republican Party proposes that the decision whether to count those UOCAVA ballots postmarked after November 2, 2010 and received after the deadlines set out in the Consent Decree be held in abeyance by the Court, and that the Court direct the parties to segregate and preserve such ballots pending subsequent litigation or until further order by this Court.

15.    While this injunctive relief requested by the Illinois Republican Party will not fully vindicate those voters' rights, it will more fully ensure their suffrage than the Consent Decree as proposed by the DOJ and SBE.

*      *      *

4

WHEREFORE, The Illinois Republican Party moves this Court: (1) to issue an injunction ordering the SBE, and vesting the SBE with such authority, to direct all Illinois election authorities to count all UOCAVA ballots received by November 19, 2010 regardless of the postmark on the ballot; or in the alternative (2) to issue an injunction ordering the SBE, and vesting the SBE with such authority, to direct all Illinois election authorities to preserve all UOCAVA ballots postmarked after November 2, 2010, but received by November 19, 2010, until it is determined by this Court that those ballots might affect the outcome of any disputed election on the November 2, 2010 ballot, at which time the Court can direct further briefing or action by the parties.

Respectfully submitted,

The Illinois Republican Party

/s/

Counsel for the Plaintiff Intervenor

John Fogarty, Jr.
Law Office of John Fogarty, Jr.
4043 N. Ravenswood, Ste. 226
Chicago, Illinois 60613
(773) 549-2647
(773) 681-7147 (fax)
fogartyjr@gmail.com
ARDC # 6257898

Brien Sheahan
Law Office of Brien Sheahan
5 Saint Regis Court
Elmhurst, Illinois 60126
(630) 728-4641 phone
(866) 796-5676 fax
bsheahan@sheahanlaw.com
Illinois attorney registration No. 6256664

| County/Local Election Jurisdiction | Number of UOCAVA ballots requested by Sept 18 | Number of UOCAVA ballots sent out on or by Sept 18 | If not sent by Sept 18, how many were sent | and on what date | How many were mailed? | How many were e-mailed? | How many were overseas citizens? | How many were domestic military? | How many were overseas military? | |
|---|---|---|---|---|---|---|---|---|---|---|
| Adams | 28 | 28 | | | 28 | 0 | 0 | 0 | 28 | |
| Alexander | 2 | 0 | 2 | 25-Sep | 2 | 0 | 0 | 1 | 1 | |
| Bond | 0 | | | | | | | | | |
| Boone | 2 | 0 | 2 | 4-Oct | 2 | 0 | 0 | 2 | 0 | |
| Brown | 0 | | | | | | | | | |
| Bureau | 6 | 6 | | | 6 | 0 | 0 | 6 | 0 | |
| Calhoun | 4 | 2 | 2 | 22-Sep | 4 | 0 | 0 | 4 | 0 | do not track domestic v overseas |
| Carroll | 5 | 5 | | | 5 | 0 | 1 | 2 | 2 | |
| Cass | 4 | 4 | | | 4 | 0 | 1 | 1 | 2 | |
| Champaign | 654 | 654 | | | 483 | 171 | 430 | 224 | | do not track domestic v overseas |
| Christian | 7 | 7 | | | 0 | 7 | | | | |
| Clark | 0 | | | | | | | | | |
| Clay | 16 | 16 | | | 11 | 0 | 5 | 16 | 0 | do not track domestic v overseas |
| Clinton | 35 | 0 | 34 | 22-Sep | 31 | 4 | 1 | 21 | 14 | |
| Coles | 0 | | | | | | | | | |
| Cook | 538 | 538 | | | 304 | 144 | | 185 | 353 | |
| Crawford | 0 | | | | | | | | | |
| Cumberland | 0 | | | | | | | | | |
| DeKalb | 50 | 50 | | | 40 | 10 | 30 | 18 | 2 | |
| Dewitt | 1 | 1 | | | 0 | 1 | 0 | 0 | 1 | |
| Douglas | 27 | 27 | | | 0 | 0 | 6 | 14 | 7 | |
| DuPage | 1559 | 1559 | | | 342 | 982 | 537 | 150 | 45 | |
| Edgar | 3 | 0 | 3 | 20-Sep | 3 | 0 | 0 | 2 | 1 | |
| Edwards | 0 | | | | | | | | | |
| Effingham | 6 | 6 | | | 6 | 0 | 0 | 4 | 2 | |
| Fayette | 4 | 0 | 4 | 22-Sep | 0 | 4 | 3 | 1 | 0 | |
| Ford | 3 | 0 | 3 | 30-Sep | 0 | 0 | 2 | 1 | | |
| Franklin | 1 | 0 | 1 | 21-Sep | 1 | 0 | 0 | 1 | 0 | |
| Fulton | 3 | 3 | | | 0 | 3 | 2 | 1 | 0 | |
| Gallatin | 7 | 0 | 6 | 30-Sep | 6 | 0 | 0 | 6 | 0 | |
| Greene | 26 | 26 | | | 26 | 0 | 0 | 13 | 13 | |
| Grundy | 63 | 63 | | | 62 | 1 | 8 | 55 | 0 | |
| Hamilton | 1 | 0 | 1 | 22-Sep | 1 | 0 | 0 | 1 | 0 | do not track domestic v overseas |
| Hancock | 3 | 0 | 7 | 5-Oct | 7 | 0 | 0 | 4 | 3 | |
| Hardin | 0 | | | | | | | | | |
| Henderson | 0 | | | | | | | | | |
| Henry | 124 | 0 | 124 | 23-Sep | 124 | 0 | 24 | 78 | 22 | |
| Iroquois | 51 | 51 | | | 51 | 0 | 6 | 31 | 14 | |
| Jackson | 135 | 134 | 1 | 24-Sep | 134 | 1 | 47 | 76 | 11 | |
| Jasper | 0 | | | | | | | | | |
| Jefferson | 41 | 41 | | | 41 | 0 | 4 | 33 | 4 | |
| Jersey | 2 | 0 | 5 | 4-Oct | 7 | 0 | 2 | 4 | 1 | |
| JoDaviess | 0 | | | | | | | | | |
| Johnson | 0 | | | | | | | | | |
| Kane | 419 | 0 | 419 | 20-Sep | 392 | 27 | 249 | 123 | 47 | |
| Kankakee | 17 | 17 | | | 17 | 0 | 8 | 4 | 5 | |
| Kendall | 5 | 5 | | | 5 | 0 | 2 | 3 | 0 | |
| Knox | 10 | 10 | | | 10 | 0 | 0 | 8 | 2 | |
| Lake | 1191 | 1191 | | | 917 | 274 | 643 | 432 | 116 | |
| LaSalle | 69 | 69 | | | 69 | 0 | 0 | 69 | 0 | |
| Lawrence | 21 | 20 | 1 | 24-Sep | 21 | 0 | 3 | 13 | 5 | |
| Lee | 61 | 61 | | | 61 | 0 | 0 | 49 | 15 | |
| Livingston | 3 | 3 | | | 3 | 0 | 1 | 2 | 1 | |
| Logan | 7 | 7 | | | 7 | 0 | 0 | 5 | 2 | |
| Macon | 134 | 134 | | | 134 | 0 | 0 | 101 | 33 | |
| Macoupin | 78 | 36 | 40 | 20-Sep | 75 | 3 | 12 | 54 | 12 | |
| Madison | 115 | 115 | | | 100 | 11 | 9 | 91 | 24 | |
| Marion | 5 | 0 | 5 | 21-Sep | 4 | 1 | 0 | 5 | 0 | |
| Marshall | 2 | 2 | | | 2 | 0 | 0 | 2 | 0 | do not track domestic v overseas |
| Mason | 3 | 3 | | | 1 | 2 | 2 | 1 | 0 | |
| Massac | 4 | 0 | 4 | 8-Oct | 4 | 0 | 2 | 2 | 0 | do not track domestic v overseas |
| McDonough | 7 | 7 | | | 7 | 0 | 1 | 5 | 1 | |
| McHenry | 57 | 57 | | | 57 | 0 | 18 | 36 | 3 | |
| McLean | 18 | 18 | | | 18 | 0 | 0 | 9 | 6 | |
| Menard | 8 | 0 | 8 | 30-Sep | 7 | 1 | 0 | 8 | 0 | do not track domestic v overseas |
| Mercer | 11 | 11 | | | 6 | 5 | 1 | 0 | 5 | |
| Monroe | 17 | 0 | 17 | 23-Sep | 17 | 0 | 0 | 15 | 2 | |
| Montgomery | 1 | 1 | | | 0 | 1 | 0 | 1 | 0 | |
| Morgan | 52 | 0 | 52 | 24-Sep | 52 | 0 | 8 | 32 | 12 | |
| Moultrie | 1 | 0 | 3 | 23-Sep | 4 | 3 | 3 | 4 | 0 | |
| Ogle | 5 | 5 | | | 5 | 0 | 1 | 4 | 0 | |
| Peoria (County of) | 82 | 82 | | | 62 | 19 | 33 | 31 | 18 | |
| Perry | 23 | 23 | | | 23 | 0 | 2 | 13 | 8 | |
| Piatt | 4 | 0 | 4 | 21-Sep | 4 | 0 | 1 | 1 | 2 | |
| Pike | 0 | | | | | | | | | |
| Pope | 0 | | | | | | | | | |
| Pulaski | 0 | | | | | | | | | |
| Putnam | 0 | | | | | | | | | |
| Randolph | 7 | 7 | | | 7 | 0 | 1 | 8 | 1 | |
| Richland | 23 | 23 | | | 23 | 0 | 7 | 10 | 6 | |
| Rock Island | 59 | 0 | 47 | 20-Sep | 47 | 0 | 12 | 27 | 0 | |
| Saline | 26 | 26 | | | 25 | 1 | 0 | 16 | 10 | |
| Sangamon | 272 | 272 | | | 257 | 15 | 96 | 132 | 44 | |
| Schuyler | 4 | 0 | 1 | 9/30/2010** | 3 | 0 | 0 | 3 | 0 | **2 were mailed on Oct 5 |
| Scott | 7 | 2 | 5 | 27-Sep | 7 | 0 | 1 | 5 | 1 | |
| Shelby | 40 | 44 | | | 44 | 0 | 11 | 29 | 4 | |
| Stark | 0 | | | | | | | | | |
| St. Clair | 1274 | 0 | 1274 | 4-Oct | 1274 | 0 | 145 | 906 | 223 | |
| Stephenson | 95 | 95 | | | 93 | 2 | 24 | 69 | | do not track domestic v overseas |
| Tazewell | 232 | 18 | 179 | 9/20/2010** | 178 | 54 | 72 | 127 | 33 | **34 were mailed on Sept 22 |
| Union | 0 | | | | | | | | | |
| Vermilion | 10 | 0 | 10 | 24-Sep | 10 | 0 | 0 | 10 | 0 | do not track domestic v overseas |
| Wabash | 6 | 0 | 6 | 24-Sep | 6 | 0 | 0 | 4 | 2 | |
| Warren | 31 | 31 | | | 31 | 0 | 7 | 20 | 4 | |
| Washington | 0 | | | | | | | | | |
| Wayne | 3 | 0 | 3 | 24-Sep | 3 | 0 | 0 | 2 | 1 | |
| White | 13 | 13 | | | 11 | 2 | 1 | 7 | 5 | |
| Whiteside | 16 | 16 | | | 16 | 0 | 5 | 9 | 2 | |
| Will | 671 | 139 | 341 | 23-Sep | 517 | 111 | 115 | 375 | 74 | |
| Williamson | 130 | 130 | | | 109 | 21 | 15 | 87 | 28 | |
| Winnebago | 12 | 12 | | | 8 | 4 | 3 | 5 | 3 | |
| Woodford | 84 | 84 | | | 84 | 0 | 37 | 42 | 5 | |
| Aurora | 144 | 144 | | | 144 | 0 | 62 | 64 | 18 | |
| Bloomington | 96 | 96 | | | 96 | 0 | 38 | 45 | 13 | |
| Chicago | 7163 | 7163 | | | 982 | 6181 | 5299 | 1396 | 466 | |
| Danville | 79 | 29 | 50 | 23-Sep | 79 | 0 | 20 | 50 | 9 | |
| East St. Louis | 1 | 0 | 1 | 22-Sep | 1 | 0 | 0 | 1 | 0 | |
| Galesburg | 22 | 21 | | | 21 | 0 | 5 | 16 | 5 | |
| Peoria (City of) | 6 | 0 | | | 6 | 2 | 3 | 6 | 0 | |
| Rockford | 205 | 205 | | | 199 | 6 | 76 | 100 | 29 | |
| | | | | | | | | | | |
| TOTAL | 16575 | 13677 | 2665 | | 8213 | 8075 | 16288 | 4921 | 1832 | |

This chart is complete as of 3:30 pm on Thursday, October 14, 2010.



EXHIBIT C