IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10-cv-06800 |
| v. | ) | Judge Hibbler |
| | ) | |
| THE STATE OF ILLINOIS; | ) | |
| THE ILLINOIS STATE BOARD OF | ) | |
| ELECTIONS; and DANIEL WHITE, | ) | |
| Executive Director of the Illinois State | ) | |
| Board of Elections, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**RESPONSE OF THE UNITED STATES IN OPPOSITION
TO MOTION TO INTERVENE AND PETITION FOR INJUNCTION
OF REPUBLICAN PARTY OF ILLINOIS**

On October 22, 2010, the United States filed this action pursuant to the Uniformed and

Overseas Citizens Absentee Voting Act ("UOCAVA"), 42 U.S.C. 1973ff to 1973ff-7, alleging

violations by the State of Illinois of provisions of UOCAVA related to the transmission of

absentee ballots to uniformed services and overseas voters ("UOCAVA voters").  ECF No. 1.

The parties simultaneously filed a joint motion requesting Court approval of an attached

proposed Consent Decree agreed to by the parties.  ECF No. 3.  On October 22, 2010, this Court

signed the parties' proposed Consent Decree and entered it as an Order of the Court.  ECF No. 8.

Following entry of the Court's Order, movant-intervenor Republican Party of the State of Illinois

filed a Motion to Intervene and a Petition for Injunction.  ECF No. 9.  The United States hereby

submits its response to the filings of the movant-intervenor.

## Introduction

This Court should deny movant-intervenor's motion to intervene and, therefore, its petition for injunctive relief. First, the relief granted by the Consent Decree adequately remedies the UOCAVA violations alleged by the United States. The Consent Decree approved by the Court provides 45 days transit time to voters in every county in which timely-requested UOCAVA ballots were mailed beyond the State's ballot receipt deadline, save one county with four late UOCAVA ballots and three counties that each mailed one late UOCAVA ballot. The UOCAVA voters who will receive fewer than 45 days will be offered a pre-paid, express return option to make up that time. This remedy provides relief to those uniformed services and overseas voters to ensure they will have sufficient opportunity to receive, mark and return their ballots in time to be counted. Indeed, it is the usual and ordinary relief that the United States obtains in a UOCAVA case, and this Court has found such relief to be fair, reasonable and in compliance with UOCAVA.

Movant-intervenor requests intervention in this action, brought by the United States, to seek relief which is simply unprecedented – providing for the actual casting of ballots by perhaps thousands of voters after the polls have closed on November 2, 2010 – the day established by Congress for the Federal general election. In doing so, movant-intervenor seeks to overturn the time-honored principle in this country of a uniform Election Day, and to upend a carefully-crafted Court-approved remedy in this action, implementation of which has already begun.

Second, movant-intervenor lacks standing to raise its claims in this action. To possess standing, a party must suffer an injury traceable to challenged conduct which can be redressed through court action. Any injury caused by the State of Illinois's alleged UOCAVA violations has been redressed through the Consent Decree entered by this Court, which this Court has found

to be fair, reasonable, and consistent with federal law. Moreover, as indicated, the relief sought by the movant-intervenor is unprecedented and should not be granted by this Court. There is thus no basis for movant-intervenor's participation in this action.

Third, even if movant-intervenor has standing to assert its claims, it does not meet the standards for either intervention of right or permissive intervention. While movant-intervenor may have interests under UOCAVA and the Constitution, these interests are not impaired. In addition, and of great significance, movant-intervenor cannot demonstrate a lack of adequate representation of whatever interests it has. The United States' actions in enforcing UOCAVA refute any claim that the United States has not adequately represented the interests of UOCAVA voters. The resolution of this action between the United States and defendants, which this Court has approved, provides relief that is fair, adequate, and reasonable to remedy the violations of UOCAVA under the circumstances presented. Movant-intervenor's request for permissive intervention should also be denied. Allowing intervention at this time, after adequate relief has been obtained by the United States and after implementation of this Court's Order has begun, can only serve to cause confusion, delay, and disruption of the agreed-upon remedy ordered by this Court.

Finally, even if this Court finds a right to intervene, movant-intervenor's petition for injunction must be denied. Movant-intervenor does not demonstrate that it meets the standards for the injunctive relief which it seeks, as is its burden.

I.      FACTS AND STATUTORY BACKGROUND

A. UOCAVA and Illinois's UOCAVA Violations

The Military and Overseas Voter Empowerment Act, Pub. L. No. 111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2318-2335 (2009) ("MOVE Act") was signed into law on October 28,

2009.  It amended UOCAVA and improved the opportunities for absent military and civilian

overseas voters to vote in Federal elections.  As amended by the MOVE Act, UOCAVA

provides, in pertinent part:

> Each State shall—

> (1)     permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office;

> (7)     in addition to any other method of transmitting blank absentee ballots in the State, establish procedures for transmitting by mail and electronically blank absentee ballots to absent uniformed services voters and overseas voters with respect to general, special, primary, and runoff elections for Federal office in accordance with subsection (f);

> (8)      transmit a validly requested absentee ballot to an absent uniformed services voter or overseas voter--

>> (A) except as provided in subsection (g), in the case in which the request is received at least 45 days before an election for Federal office, not later than 45 days before the election; and

>> (B) in the case in which the request is received less than 45 days before an election for Federal office--

>>> (i) in accordance with State law; and

>>> (ii) if practicable and as determined appropriate by the State, in a manner that expedites the transmission of such absentee ballot . . . .

42 U.S.C. § 1973ff-1(a).

UOCAVA provides absent military and civilian overseas voters the opportunity to

register and vote by absentee ballot in Federal elections conducted by the state in which they

were last domiciled.  42 U.S.C. §§ 1973ff-1, 1973ff-6.  Under the MOVE Act amendments, to

vindicate this opportunity, states must transmit absentee ballots to UOCAVA voters forty-five

days in advance of a Federal election to allow voters sufficient time to receive, mark, and return their ballots to the appropriate election official.  42 U.S.C. § 1973ff-1(a)(8)(A).

In this action, the United States alleged widespread UOCAVA violations in Illinois.  The Complaint alleges that thirty-five of Illinois's election jurisdictions failed to transmit absentee ballots to UOCAVA voters by September 18, 2010, the forty-fifth day before the November 2 general election.  Those counties transmitted ballots at varying times.  Twenty-nine counties transmitted ballots between two and twelve days late.  Three counties transmitted ballots sixteen days late.  Two counties transmitted ballots seventeen days late.  One county transmitted ballots twenty days late.  The United States alleged that these late transmissions violated Section 102(a)(8)(A) of UOCAVA.  42 U.S.C. § 1973ff-1(a)(8)(A).

Some Illinois election jurisdictions also failed to transmit absentee ballots electronically to UOCAVA voters who requested electronic transmission.  The United States alleged that those failures violated Sections 102(a)(7) and 102(f)(1) of UOCAVA.  42 U.S.C. §§ 1973ff-1(a)(7), 1973ff-1(f)(1).

### B.  The Consent Decree

Upon learning of these UOCAVA violations, the United States entered into immediate discussions with defendants to craft a remedy for the violations.  On October 22, 2010, the United States filed a Consent Decree signed by the parties and a joint motion to enter the Decree, which asserted that the parties had negotiated in good faith, and agree that the Consent Decree is an "appropriate resolution of the [UOCAVA] claims alleged" by the United States.  Consent Decree at 2, ECF No. 3.  That same day, this Court granted the joint motion and entered the Decree.  ECF No. 8.  The terms of the Decree, as entered by the Court were "fair, reasonable, and consistent with the requirements of UOCAVA."  Consent Decree at 5.

The Consent Decree, among other things: 1) requires that all UOCAVA voters who properly requested but did not receive transmission of their ballots electronically be provided that opportunity immediately; 2) extends the deadline for receipt of ballots for voters in Boone, Jersey and St. Clair Counties to November 18, 2010, and for UOCAVA voters in Hancock, Massac and Schuyler Counties to November 19, 2010; and 3) extends the deadline by which ballots must be postmarked in order to be counted from November 1 to November 2, 2010 for Boone, Jersey, St. Clair, Hancock, Massac and Schuyler Counties. In addition, the Decree requires the State to publicize the Decree's requirements by notice to affected voters and distribution of a press release to various organizations and publications, requires affected Counties to certify transmittal of ballots to the State Board, requires specific actions if Defendants discover other late-mailed ballots, and requires Counties' certification and reporting of detailed information concerning the results of their efforts for filing with the Court.

## II. ARGUMENT

### A. The Relief Sought by Movant-intervenor is Unprecedented, While the Consent Decree Entered by this Court Provides a Fair, Reasonable, and Adequate Remedy for the UOCAVA Violations

Movant-intervenor has proposed an unprecedented, unreasonable and unnecessary remedy. The crux of movant-intervenor's petition for relief would remove the postmark rule entirely, thereby permitting some or all UOCAVA voters to vote their absentee ballots for as many as seventeen days after the officially designated Election Day. The movant-intervenors' proposed remedy, permitting voting after Election Day, is seemingly unprecedented in UOCAVA cases or any other cases of which the United States is presently aware. This proposed remedy is unnecessary given that the Consent Decree entered in this case already ensures the affected UOCAVA voters will have sufficient opportunity to cast their ballots. This

6

proposed remedy is also unreasonable because it cuts against bedrock democratic principles that votes should not be cast after Election Day and that voters should have equal access to information about the election.  In our nation's elections, votes are to be cast by the close of polls on Election Day and before any votes are tallied and publicized.  Withholding the release of official election results until after all ballots are cast ensures a level playing field for voters.  That is, no class of voters in a jurisdiction should have access to information about how their own votes will impact cumulative vote tallies before casting their vote.  Buttressing the principle of equal access by all voters to election information, Congress has set a uniform date for Senate, House and Presidential general elections, 2 U.S.C. §§1, 7 and 3 U.S.C. §1, premised on Congress' constitutional authority to select the day when Presidential electors and Congressional representatives are chosen.  U.S. Const. art. I, § 4, cl. 1; art. II, §1.   Movant-intervenor's proposed remedy would be inconsistent with the bedrock principle embodied in these federal statutes.

That the movant-intervenor's proposed post-Election Day voting remedy is an unprecedented departure from how we conduct elections in this nation is also evidenced by how courts have remedied violations of UOCAVA.  The Department has found no reported UOCAVA cases that describe a remedy authorizing voting after Election Day.  Likewise, the Department is not aware of any consent decrees in UOCAVA cases which contemplated the voting of ballots after Election Day.  Indeed, nothing in the text of UOCAVA authorizes ballots to be voted after Election Day or suggests this would be an appropriate remedy.

In stark contrast, the Consent Decree entered by this court is fair, reasonable, and wholly consistent with the requirements of UOCAVA.  The remedial measures it provides are a fully adequate remedy for Illinois's violations of the MOVE Act's forty-five day ballot transmittal

requirement.  Under Illinois law, where absentee ballots are postmarked by the day before the

election (November 1), or where a postmark is lacking but the absentee ballot possesses a voter

certification date of the day preceding the election, such ballots are to be counted if received by

November 16, 2010, the 14th day after Election Day (which is the period under state law for

counting provisional ballots).  Ill. Statutes Chap. 10 § 5/19-8(c), 10 § 5/19-3, 10 § 5/20-3; 10 §

5/19-8(c).

Hence, pursuant to the existing 14-day extension in state law, voters in those 29 Illinois

counties that mailed ballots between two and twelve days late will have at least a 45 day period

from the date the blank ballots were mailed before their voted ballots must be received by

election officials.  Pursuant to the Consent Decree, voters from the six referenced counties that

sent their ballots more than 14 days late will have either two or three additional days for

returning their ballots, to provide a 45-day period from the date they were mailed.[1]  In addition,

pursuant to the Consent Decree, voters in these six counties will have an additional day, until

November 2, 2010, to postmark their ballots.  Thus, UOCAVA voters in all 35 election

jurisdictions, save for six voters and one voter in another county,[2] that were identified as having

---

[1]  The affected ballots in the 6 referenced counties will have 29, 28 or 25 days of transit time
before the November 2 postmark date.  In theory, the MOVE Act's 45 day requirement affords 22 ½ days
for a ballot to be received by a voter (i.e., half of 45 days) in a situation where the full 45 day round trip is
necessary for the ballots to be counted.

[2] The four ballots sent late in Massac County will have a total of 42 days transit time.  Any
further extension of the ballot receipt deadline would have conflicted with this court's order in *Judge v
Quinn*, No. 9-C-1231 (N.D. Ill. Aug 2, 2010), setting the canvassing date for the special election for U.S.
Senate for November 19, 2010.  The Consent Decree in this case requires Massac County to contact each
of these four voters and provide pre-paid, express means to return their ballots, providing additional
insurance that these ballots will return in time to be counted.  In addition, the most recent information
provided by the State indicates three counties seem to have transmitted one ballot each after
October 8, 2010.  The circumstances surrounding those late transmittals are unclear, though they
may have resulted from voter address confusion.  In any event, if timely and validly requested,
those ballots are covered by Section 5(b) of the Consent Decree and those voters will be
provided the extended deadline and a pre-paid, express means of returning their ballots.

transmitted ballots after the 45th day before the election, will have a 45-day window to receive, mark, and return their ballots.

In the legislative history of the MOVE Act, Senator Charles E. Schumer, an original sponsor of the Act, stated that the MOVE Act "ensures that military and overseas voters have at least 45 days to receive and complete their absentee ballots and return them to election officials." 156 Cong. Rec. at S4513-S4514 (daily ed. May 27, 2010). This legislative history statement quoted Senate committee testimony delivered by a Department of Defense official who stated the goal of DOD's legislative recommendations was to "improve ballot transit time" by first providing "at least 45 days between the ballot mailing date and the date ballots are due." *Id*. Thus, by providing 45 days of transit time between when ballots are mailed and when they are due, the Consent Decree's remedial structure fulfills the core purpose of the MOVE Act's 45 day deadline: to ensure UOCAVA voters are offered sufficient opportunity to receive, vote and return their ballots in time for the ballots to be counted.

The Consent Decree also provides a fair and adequate remedy for a separate MOVE Act violation by ordering the defendants to immediately transmit ballots electronically to voters who requested electronic ballots but were instead mailed ballots. In addition, the Consent Decree provides for prospective relief that includes ordering the defendants to investigate the cause of the late mailed ballots and the failure to transmit ballots electronically and taking administrative or legislative action to prevent future UOCAVA violations.

The measures contained in the Consent Decree entered by this Court are the usual and ordinary remedy that the United States has obtained by consent decree or court order in dozens of cases under UOCAVA since its enactment in 1986 – an extension of the deadline until after the election for voters to return their ballots, without contemplating changing the bedrock

principle that votes must be cast by Election Day and absentee ballots placed in the mail by Election Day.  These ordinary measures provide a fair, reasonable and adequate remedy for UOCAVA violations.  Most importantly, these measures will ensure that the affected UOCAVA voters will have sufficient opportunity to vote and return their ballots in time to be counted.

The parties have agreed upon, and this Court has approved, a Consent Decree that is fair, reasonable, and adequate.  Allowing post-Election Day voting is thus an unnecessary and radical experiment this Court need not, and should not, approve.[3]

## B.  Movant-Intervenor Lacks Standing

Movant-intervenor lacks standing to intervene.  Standing "is a necessary component of intervention as of right under Rule 24(a)." *Bond v. Utreras*, 585 F.3d 1061, 1069-70 (7th Cir. 2009) (citation omitted).  Although the Seventh Circuit has not concretely decided the question of whether standing is necessary for permissive intervention generally, *see id.* at 1071, it has suggested that standing is necessary for permissive intervention when there is otherwise no live case or controversy.  *See id.* ("The Supreme Court has also suggested, if not directly held, that permissive intervenors must show standing if there is otherwise no live case or controversy in existence.").  Because both parties to this action have agreed upon a consent decree, and the Court has entered that Decree, no live case or controversy exists.  Thus, movant-intervenor must establish standing.

The jurisdiction of federal courts is limited to actual cases or controversies between proper litigants.  U.S. Const. art. III, § 2; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Constitutional standing requires that a party have suffered an actual or threatened injury, which may be fairly traced to the challenged action and which is "likely to be redressed

---

[3]  For the same reasons discussed above, the movant-intervenor's alternative proposed remedy to segregate the UOCAVA ballots voted after November 2, is unreasonable and unnecessary.

10

by a favorable decision" of the court. *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 661 (D.C. Cir. 1996) (en banc) (quoting *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). These requirements—injury, causation, and redressability—are an "irreducible constitutional minimum," and the absence of any one of these elements defeats standing. *Lujan*, 504 U.S. at 560-61. It is movant-intervenor's burden to establish each of the required elements. *See id.* at 561.

The movant-intervenor fails to satisfy the injury and redressability requirements for standing given that the Consent Decree redresses movant-intervenor's interests. The relief that movant-intervenor seeks, beyond the relief already granted by the Consent Decree, is a waiver of the postmark deadline for return of UOCAVA ballots. However, for the reasons stated above, that relief is inconsistent with federal law and the long tradition in American elections of uniform election days. Absent the postmark waiver, movant-intervenor requests no more relief than is already granted by the entered Consent Decree. The injury claimed by movant-intervenor therefore cannot be redressed by their proposed relief and movant-intervenors lack standing to intervene in this action.

## C.  Movant-Intervenors Are Not Entitled To Intervene As Of Right

Rule 24(a)(2) establishes four criteria for intervention as of right: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994) (citation omitted). Movant-intervenor must prove "each of the four elements of intervention as of right; the lack of one element requires that the motion to intervene be denied."

*Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985).  Movant-intervenors cannot satisfy the intervention as of right standard.

    *1. Timeliness and Interests*

        The United States does not dispute that movant-intervenors filed a timely motion to intervene and may possess interests under UOCAVA and the Constitution.

    *2. Impairment of Interest*

        Whether or not the movant-intervenor possesses a direct, legally protectable interest in the subject matter of this action, movant-intervenor's interest will not be impaired by the Consent Decree already entered by this Court.  "The existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Am. Nat'l Bank & Trust Co. v. Chicago*, 865 F.2d 144, 147-48 (7th Cir. 1989) (quoting *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982)).  As discussed above, the relief agreed upon by the parties sufficiently remedies the UOCAVA violations alleged by the United States.  Furthermore, the relief requested by movant-intervenor is inconsistent with federal law and the long tradition in American elections of uniform election days.  The relief already obtained represents full and adequate relief in light of present constraints; movant-intervenor's interest is not impaired.

    *3. Adequacy of Representation*

        The United States has adequately represented UOCAVA voters in this action. Representation is adequate (1) if no collusion exists between the representative and an opposing party; (2) if the representative does not have or represent an interest adverse to the proposed intervenor; and (3) if the representative does not fail in the fulfillment of his duty.  *United States*

*v. S. Bend Cmty. School Corp.*, 692 F.2d 623, 628 (7th Cir. 1982) (quoting *Martin v. Kalvar Corp.*, 411 F.2d 552, 553 (5th Cir. 1969)).  Movant-intervenor has not alleged collusion; none exists.  As discussed below, the United States does not have an interest adverse to the movant-intervenor and the United States has not failed in fulfillment of its duty.

As a preliminary matter, adequacy of representation may be presumed in this case.  The Seventh Circuit has repeatedly held that "[a]dequacy [of representation] can be presumed when the party on whose behalf the applicant seeks intervention is a governmental body or officer charged by law with representing the interests of the proposed intervenor."  *Keith v. Daley*, 764 F.2d 1265, 1270 (7th Cir. 1985); *see also Am. Nat'l Bank & Trust Co. v. Chicago*, 865 F.2d 144, 148 (7th Cir. 1989); *S. Bend Cmty. School Corp.*, 692 F.2d at 628 ("[P]resumption [of adequacy] is especially appropriate because the existing representative, namely, the Government, is charged by law with representing the interests of the absentee.").  Here, the Attorney General has been empowered by statute to "bring . . . civil action[s] in an appropriate district court for such declaratory or injunctive relief as may be necessary to carry out" the provisions of UOCAVA. 42 U.S.C. § 1973ff-4.  Thus, this Court may presume that the Attorney General adequately represents Illinois's UOCAVA voters.

In other voting rights contexts, courts have not lightly presumed that the Attorney General has failed to adequately represent the interests of voters.  Section 5 of the Voting Rights Act, like UOCAVA, confers upon the Attorney General "the primary role in vindicating the public interest under the Act." *Apache County v. United States*, 256 F. Supp. 903, 908 (D.D.C. 1966) (three-judge court).  Where that enforcement assignment has been made by Congress, courts "should be reluctant indeed to permit intervention . . . in the absence of a plausible claim that the Attorney General is not adequately performing his statutory function . . . ." *Id*; *see also*

*Donnell v. United States*, 682 F.2d 240, 246-47 (D.C. Cir. 1982) ("[W]hen the Justice

Department defends a suit under section 5 it is acting on behalf of those whose rights are

affected. . . . We will not lightly infer that the Justice Department has violated this statutory

obligation.").

The Seventh Circuit has rejected intervention in situations similar to this one. In one

case, the Court rejected the NAACP's petition to intervene as plaintiff in an education civil rights

case brought by the Civil Rights Division of the U.S. Department of Justice. *See S. Bend Cmty.*

*School Corp.*, 692 F.2d 623. In *S. Bend*, the United States and the defendants had entered a

consent decree resolving the United States' allegations. The NAACP moved to intervene as of

right and permissively in order to challenge and alter the consent decree. *Id.* at 625-26. The

Seventh Circuit affirmed the district court's denial of the NAACP's petition to intervene.

Although the United States and the NAACP disagreed on what constituted an adequate remedy

in that case, the Court determined that they shared "the same ultimate objective." *Id.* at 628.

Because of that commonality, the Court "presume[d] that the Government adequately represents

the NAACP." *Id.* at 628.

Similarly, here, movant-intervenors and the United States share "the same ultimate

objective," that is, relief for UOCAVA voters from Illinois's UOCAVA violations. Movant-

intervenors and the United States have very different approaches to remedying the alleged

violations, but differing opinions of how to best remedy the violation do not amount to

inadequate representation. When a party moves to intervene as plaintiff to challenge the

sufficiency of a consent decree, they cannot show inadequate representation if they merely

disagree with the "considered judgment" of the original plaintiff. *B.H. v. McDonald*, 49 F.3d

294, 297 (7th Cir. 1995). The consent decree in this case represents the "considered judgment"

of the parties as to how best to remedy Illinois' alleged UOCAVA violations. The difference in

judgment between the parties and the movant-intervenors does not qualify as inadequate

representation for the purposes of intervention.

The consent decree in question need not be perfect as long as it reasonably remedies the

alleged violations and is not unlawful or contrary to public policy. In contemplating the

sufficiency of the consent decree in *S. Bend*, the Court held that "[a] consent decree of this nature

need not contain a perfect plan but only one that is 'not unconstitutional, unlawful, * * * contrary

to public policy, or unreasonable.'" *S. Bend Cmty. School Corp.*, 692 F.2d at 628 (quoting

(*United States v. City of Miami*, 614 F.2d 1322, 1333 (5th Cir. 1980)). Although movant-

intervenors contend that the Consent Decree in this action—in their estimation—fails to fully

remedy Illinois's UOCAVA violations, the decree cannot be considered unconstitutional,

unlawful, contrary to public policy, or unreasonable.

To the contrary, the Consent Decree entered in this case represents a reasonable and

appropriate remedy in light of the constraints. The Decree provides "an appropriate resolution of

the UOCAVA violations alleged by the United States." Consent Decree at 2, ECF No. 8. The

Court agreed that "the terms of the Decree" were "fair, reasonable, and consistent with the

requirements of UOCAVA." *Id.* at 5. As described above, despite Illinois's widespread

violations, the Consent Decree provides nearly every Illinois UOCAVA voter with a 45-day

window to "receive, mark, and return their ballots in time to be counted." 156 Cong. Rec. at

S4518. The Consent Decree also provides electronic transmission of absentee ballots for voters

who requested electronic transmission. Moreover, the entered relief is not inconsistent with the

court order in *Judge v. Quinn* or the fundamental value in American elections that all voting

concludes on Election Day, as described above.

15

The United States has adequately represented UOCAVA voters' right to vote in Illinois as it has across the nation. This action in Illinois is part of the United States' vigorous nationwide enforcement effort leading up to the 2010 Federal general election. Following enactment of the MOVE Act last year, the Department initiated a multi-faceted approach to ensuring compliance and remedying violations by the States and Territories where they failed to timely transmit ballot to voters in accordance with the new law. Not only has the United States obtained adequate remedial measures for UOCAVA voters in Illinois, it has successfully obtained consent decrees with three other states, a court-imposed injunction against a territory, and numerous out of court agreements with other states to ensure that military and overseas voters will have sufficient opportunity to have their ballots counted in the November 2, 2010 election. Beyond this year's elections, an important element of the United States' enforcement is securing remedial action for the future. As in the Illinois Consent Decree, where needed, the responsible officials have been required to determine the cause of the UOCAVA violations this year, and take the necessary actions following the election to prevent recurrence of the violations in future federal elections.

### D. Movant-intervenors Are Not Entitled to Permissive Intervention

This Court should deny movant-intervenor's petition to intervene permissively because permissive intervention is unnecessary and would cause delay and confusion. Rule 24(b) permits courts to allow anyone with "a claim or defense that shares with the main action a common question of law or fact" to intervene. Fed. R. Civ. P. 24(b)(1). Permissive intervention is left to the discretion of the court. Permissive intervention should be denied "if it would unduly delay or prejudice the adjudication of the rights of the original parties." *Southmark Corp. v. Cagan*, 950

F.2d 416, 419 (7th Cir. 1991). In addition, adequate representation of interests "militate[s] against permissive intervention." *Gautreaux v. Pierce*, 690 F.2d 616, 635 (7th Cir. 1982).

Permitting movant-intervenor to intervene would cause delay and confusion in carrying out the remedy already obtained by entry of the Consent Decree. Pursuant to the Consent Decree, defendants filed with the Court and issued a press release on Monday, October 25, 2010, describing the relief provided by the Consent Decree. Also pursuant to the Decree, the State Board of Elections has issued orders to the local election authorities on the implementation of the relief under the Consent Decree. Part of that relief permits UOCAVA voters from the six latest counties to postmark their ballots by November 2, 2010, rather than by midnight of November 1, 2010, as currently required by state law. To later provide new notice that UOCAVA voters may postmark their ballot until November 19, 2010, could cause confusion amongst UOCAVA voters and local election officials. Additionally, for the reasons stated above, Illinois's UOCAVA voters are adequately represented by the Attorney General. This Court should deny movant-intervenor's petition to intervene permissively.

**E. This Court Should Deny Movant-intervenor's Petition for Injunctive Relief**

This Court should reject movant-intervenor's petition for injunctive relief. As stated above, the relief movant-intervenor requests is inconsistent with federal law and the long tradition in American elections of uniform election days.

Additionally, preliminary injunctive relief requires the moving party to establish four factors: (1) a likelihood of success on the merits; (2) the likelihood of "irreparable harm in the absence of preliminary relief;" (3) "that the balance of equities tips in his favor;" and (4) "that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374 (2008); *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010). The moving party bears the burden

of proving each of these factors.  *See Roland v. Air Line Emps. Asso., Int'l*, 753 F.2d 1385, 1392 (7th Cir. 1985).  Movant-intervenor has neither discussed nor proved any of the four factors required to receive injunctive relief and therefore its petition should be rejected. In any event, given the already existing Consent Decree, found by this Court to be fair, reasonable and consistent with the requirements of UOCAVA, there is little likelihood of irreparable harm if movant-intervenor's request is denied.  Moreover, since movant-intervenor asks for relief which this Court should not grant, a balancing of the equities militates in favor of denying the relief.

## III.    CONCLUSION

For the reasons set forth above, movant-intervenor's Motion to Intervene and petition for injunctive relief should be denied.

Date: October 26, 2010

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney
Northern District of Illinois

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

By: */s/ Patrick W. Johnson*
PATRICK W. JOHNSON
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5327
patrick.johnson2@usdoj.gov

　*/s/ Brian F. Heffernan*
T. CHRISTIAN HERREN JR.
REBECCA WERTZ
BRIAN HEFFERNAN
ABEL GOMEZ
LEMA BASHIR
JUSTIN WEINSTEIN-TULL
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone:　(202) 353-0319
Facsimile:　(202) 307-3961

# CERTIFICATE OF SERVICE

I hereby certify that a true copy of the forgoing document was filed through the Court's ECF system and served this 26th day of October 2010 via U.S. Mail upon the following:


KATHLEEN KREISEL FLAHAVEN
THOMAS A. IOPPOLO
S. ANN WALLS
General Law Bureau
100 W. Randolph Street, 13th Floor
Chicago, Illinois  60601
Telephone: (312) 814-3313
Facsimile: (312) 814-4425

STEVE SANDVOSS
1020 S. Spring St.
Springfield, IL 62704
Phone: (217) 782-4141
Fax: (217) 782-5959

BRIAN SHEAHAN
Law Office of Brian Sheahan
5 Saint Regis Court
Elmhurst, IL 60126
Telephone: (630) 728-4641
Facsimile: (630) 728-5676

JOHN FOGARTY, JR.
Law Office of John Fogarty, Jr.
4043 N. Ravenswood, Suite 226
Chicago, IL 60613
Telephone: (773) 549-2647
Facsimile: (773) 681-7147


_____/s/_____
BRIAN F. HEFFERNAN