UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 10 C 6800 |
| v. | ) | |
| | ) | Hon. William J. Hibbler |
| THE STATE OF ILLINOIS, THE ILLINOIS | ) | |
| STATE BOARD OF ELECTIONS, and | ) | |
| DANIEL WHITE, Executive Director of the | ) | |
| Illinois State Board of Elections, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO
PETITION TO INTERVENE BY THE ILLINOIS REPUBLICAN PARTY**

Defendants, by and through their attorney, LISA MADIGAN, Attorney General of the

State of Illinois, submit the following in response to the petition to intervene and ask that it be

denied:

**Background**

The Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), 42 U.S.C.

1973ff et seq., imposes on the States certain requirements to assist overseas and uniformed

services voters in elections for federal offices. In relevant part, it provides that the States must

transmit validly requested absentee ballots to military and overseas voters no less than 45 days

before the election. 42 U.S.C. 1973ff-1(8)(A). If the request is made less than 45 days before the

election, then the absentee ballot is to be sent in accordance with state law. 42 U.S.C. 1973ff-

1(a)(8)(B). Absentee ballots can be sent to the voter by mail or electronically, but should be sent

according to the voter's expressed preference. 42 U.S.C.1973ff-1(f)(1)(A).

1

In Illinois, the Illinois State Board of Elections exercises general supervisory authority over state elections, but the actual administration of elections—hiring of election judges, operation of voting machines, and compliance with absentee voting procedures, including UOCAVA—is the responsibility of 110 local election authorities at the county or municipal level.

After inquiries were made by the United States Justice Department about whether the state's election authorities were complying with UOCAVA, the parties became aware that some election authorities had not timely sent out ballots on September 18, 2010 (45 days before the election), and that some may not have sent ballots electronically to voters who expressed that preference. The delay was due in part to the fact that litigation was still in progress in the state courts as to whether a new political party would appear on the ballot, and some election authorities apparently held off printing ballots until the litigation was resolved. Be that as it may, the delay in sending out the ballots was not consistent with the terms of UOCAVA. Six counties sent out ballots in late September and early October. One (Massac County) sent out four ballots on October 8, 2010.

The State and the Justice Department entered into negotiations to develop remedies for this situation, culminating in a consent decree that this Court signed on October 22, 2010. The decree extends the voting deadline in the affected jurisdictions for postmarking a ballot from November 1 to November 2, 2010 (election day), and extends the time for UOCAVA voters in the six jurisdictions to return ballots for counting. Under Illinois law, absentee ballots postmarked by November 1 can be accepted and counted for 14 days after the election (November 16, 2010). The decree extends this time for return of ballots to November 18 for

UOCAVA voters in three counties and November 19 in three other counties.

The decree further requires that local election authorities immediately provide ballots electronically to UOCAVA voters if that was their requested means of transmission.

The decree also imposes certain reporting requirements on the State and local election authorities to certify compliance with the terms of the decree.

**The Injunction in Judge v. Quinn**

The consent decree was not negotiated in a vacuum. In Judge v. Quinn, 09 C 1231, Judge Grady ordered, in accordance with the mandate of the Seventh Circuit, that there be a special election on November 2, 2010, to complete the term of former Sen. Obama, a seat now held by Sen. Burris. Ex. A., attached. The special election will be for the final weeks of the current six year term, with the new six year term to begin in January, 2011. Because the term for the special election is only about two months, Judge Grady's order requires that the results for the special election be certified no later than November 24, 2010 (ahead of the normal December 3, 2010, certification date established in Illinois law). Ex. A, par. 15. Judge Grady's order also requires that local election authorities report their results to the State Board on the special Senate election on November 19, 2010, sooner than normal, so that the newly elected Senator for the last two months of the current six year term can begin service as soon as practicable. *Id.* The consent decree does not conflict with the Judge v. Quinn injunction. The latest date for UOCAVA ballots to be counted (for three counties) is November 19, 2010.

**The Intervention Petition**

The Republican Party has moved to intervene seeking to extend the dates in the consent decree for UOCAVA voters to cast their votes. Not only would the proposed dates conflict with

the Judge v. Quinn injunction, it is suggested that UOCAVA voters be permitted to cast ballots *after* the November 2, 2010 election day. This would cause further delay and be inconsistent with federal law prescribing the first Tuesday after the first Monday in November as the federal election day. There is a major distinction between counting votes after November 2, and casting votes after November 2.

The intervention petition is legally defective for a number of reasons and should be denied. Most significantly, the complaint that accompanies the petition would, if filed, be dismissed primarily on jurisdictional grounds.

<u>Argument</u>

## I.      UOCAVA creates no private right of action

The statute is quite explicit about who can enforce it. The United States Attorney General is authorized to bring civil actions to enforce the Act. 42 U.S.C. 1973ff-4. The statute is silent about giving individual voters, much less political parties purporting to act for voters, a private right of action to sue. Defendants are aware of no case explicitly holding that UOCAVA creates a private right of action.

Federal laws may create certain rights, but it does not follow that a private right of action should be automatically inferred. There was a time when private rights of action were more readily found in federal statutes, but no more. Under *Cort v. Ash,* 422 U.S. 66 (1975), a four-part test was applied to determine whether to imply a private right of action. Now, particularly after *Alexander v. Sandoval,* 532 U.S.275, 287 (2001), only one part of that four-part test has become determinative–statutory intent. "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right

but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause

of action does not exist and courts may not create one, no matter how desirable that might be as a

policy matter, or how compatible with the statute." *Id.* at 286-87.    A number of Seventh Circuit

cases have noted and applied the Supreme Court's more exacting standard. See, e.g., *Edelson v.*

*Chi'en*, 405 F.3d 620, 630-31 (7th Cir. 2005); *Indiana Protection and Advocacy v. Indiana*

*Family and Social Services Administration,* 603 F.3d 365, 374-75 (7th Cir. 2010) (*en banc*);

*International Union of Operating Engineers*, *Local 150 v. Ward*, 563 F.3d 276, 282-83 (7th Cir.

2009).

Under this framework, UOCAVA does not give individual voters or their private

representatives the right to initiate civil actions in federal court. The statute's focus is entirely on

the State and its election authorities, which are subject to federal law and enforcement actions by

the United States. It would be a considerable extension of the statute–and there is no indication

Congress authorized it–to permit individual cases from absentee voters to be filed in federal

district court regarding issues such as whether a particular ballot was delivered incorrectly by

mail rather than electronically; or if a change of address was incorrectly noted in the county

election officials' files. The statute's silence on permitting such cases speaks loudly to the

absence of such private remedies. "Where the text and structure of a statute do not provide an

indication that Congress intended to create new individual rights, there is no basis for a private

suit." *Indiana Protection and Advocacy Services,* 603 F.3d at 375.

II.    **The Intervenor's Complaint is barred by the Eleventh Amendment.**

The Eleventh Amendment gives states an immunity from suit in federal court. While it

does not apply to suits by the United States against a State, a State and its agencies or departments

cannot be sued by private individuals in federal court. *Pennhurst v. Halderman,* 465 U.S. 89, 100-101 (1984). The only exception is when Congress explicitly overrides the Eleventh Amendment by legislating under its power under Section 5 of the Fourteenth Amendment. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44 (1996). UOCAVA was not passed pursuant to that power. Congress has power under Article I, section 4 of the Constitution to regulate the manner of federal elections, but its exercise of this power did not constitute an override of the State's immunity from suit. Moreover, there is nothing in the statute that explicitly overrides a state's traditional sovereign immunity from suit. As such, the intervenor's action against the State, State Board of Elections, and its Executive Director in his official capacity are barred by the Eleventh Amendment.

Although it is possible to sue state officials in their official capacity for prospective injunctive relief if they are acting contrary to federal law under *Ex parte Young*, 209 U.S. 123 (1908), the state official sued must have some enforcement connection to the alleged constitutional violation. *Weinstein v. Edgar*, 826 F.Supp. 1165 (N.D. Ill.1993).
Here, the intervenor makes no allegations against Executive Director of the State Board. The actual administration of UOCAVA is delegated as a matter of state law to local election authorities. Even if there were a private right of action under UOCAVA, if an individual voter wanted to sue to get a proper ballot, the correct defendant would not be the Executive Director. It would be the local county election official. The Eleventh Amendment bars this action against the State, the Board, and the Board's Executive Director.

There is a further Eleventh Amendment bar present. The intervenor alleges a state law claim under the Illinois Election Code. The Eleventh Amendment deprives the federal court of

6

jurisdiction to compel state officials to follow state law. *Pennhurst,* 465 U.S. at 105-106.

**III.    The State and State Board are not "persons" under 42 U.S.C. 1983**

The intervenors have invoked section 1983 as a basis for bringing suit. Neither the State

nor its agencies are persons who can be named as defendants under 42 U.S.C. 1983. *Will v.*

*Michigan Dept. of State Police,* 491 U.S. 58 (1989).

**IV.    The proposed intervenor seeks to permit voters to cast votes after the federal election day prescribed by law**.

The day for federal congressional elections is set by federal statute. It is the first Tuesday

after the first Monday in November of even numbered years. 2 U.S.C. 1; 2 U.S.C. 7. See *Foster v.*

*Love,* 522 U.S. 67 (1997). The intervenor asks this Court to permit UOCAVA voters to cast their

ballots *after* November 2, 2010. This would be inconsistent with the federal statutes prescribing

the day for federal elections. Early voting statutes have been upheld as consistent with federal law

and the holding of *Foster v. Love* (which struck down a Louisiana statute that effectively

determined the results of a federal election prior to the November election date). The rationale is

that voting early does not fully encompass all the steps needed for an "election." See *Millsaps v.*

*Thompson*, 259 F.3d 535 (6th Cir. 2001). While voting early is permissible, voting late is not.

Voters are not permitted to cast ballots after the close of the polls on election day. Illinois law, and

the consent decree in this case, permits time after election day for absentee votes to arrive and be

counted, but  UOCAVA does not authorize an absentee voter to vote and postmark a ballot days

or weeks after election day. The decree ensures that voters have 45 days to receive a ballot with

ample time to vote on or before election day and have it returned for counting by November 18 for

some effected counties or November 19 for others. All voters, however, must cast their ballot on

or before election day. Moreover, delays in casting ballots after election day would be inconsistent with the Judge v. Quinn injunction requiring faster certification of results for the special Senate election.

**V.     The petition for intervention should be denied because it fails to meet the requirements for intervention as of right as well as permissive intervention.**

For the foregoing reasons, the proposed intervenor lacks standing to bring the proposed complaint (which would be subject to dismissal on jurisdictional grounds) and the current parties and the consent decree approved by this Court adequately protect the interests of the voters and the candidates.  Accordingly, intervention as of right is not appropriate.  In addition, the Court should exercise its discretion and deny the petition for permissive intervention because the relief sought would delay the election and run afoul of federal law and Judge Grady's injunction order.

**Conclusion**

For the foregoing reasons, defendants request that the Court deny the petition for intervention.

Respectfully submitted,

LISA MADIGAN
Illinois Attorney General               /s/ Thomas A. Ioppolo
                                        THOMAS A. IOPPOLO
                                        S. ANN WALLS
                                        Assistant Attorneys General
                                        General Law Bureau
                                        100 W. Randolph Street, 13th Floor
                                        Chicago, Illinois 60601
                                        (312) 814-7198/3711/2527